345 So.2d 14 (1977)
STATE of Louisiana
v.
John Albert JOHNSON.
No. 58613.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*15 Anthony M. Fazzio, DeVillier & Ardoin, Eunice, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In an indictment returned on October 28, 1975 the grand jury of Calcasieu Parish charged John Albert Johnson with the second-degree murder of Betty Jean Chavis on August 7, 1975. La.Rev.Stat. 14:30.1(1). After entering a plea of not guilty and not guilty by reason of insanity, Johnson was tried by jury, found guilty and sentenced to imprisonment at hard labor for life without benefit of parole, probation, or suspension of sentence. On this appeal Johnson argues six assignments of error. Finding that Assignment of Error No. 5 has merit, it is not necessary to render an opinion on the others.
Betty Chavis was the common-law wife of the defendant. On the night of August 7, 1975 she drove her car to Louis' Drive-Inn in Lake Charles. She was accompanied by her son Kevin, age 8, her sister, her sister-in-law and her two young children. Betty Chavis parked near the drive-in service window, and let Kevin out to pick up food she had ordered. The car door remained opened.
While Kevin was at the service window, defendant arrived in a red Ford, parked next to Betty Chavis' car and walked to the open door. He then sought to prevail upon her to get out of the car to talk to him. When she refused, he pulled her from the car causing her head to strike the door frame after which she fell to the ground. Defendant aimed a .38 caliber pistol at her and shot four times and then raced away from the scene in his car. Betty Chavis was rushed to the hospital but was pronounced dead upon arrival. Later that night defendant, accompanied by his parents, turned himself in to the Calcasieu Parish Sheriff's office.

Assignment 5
Defendant's sister Viola Cross was called to testify on behalf of the defense. She *16 testified on direct examination that she had seen the defendant on August 1, 2, 5 and 7. On August 1 defendant came to see her at the service station where she worked. He was heartbroken and crying at the time. When she asked him what was wrong he said he was trying to talk to his wife but she refused to talk to him. They were having trouble because his wife "didn't give him a chance", some of his in-laws were interfering and another fellow was involved. He was trying to bring about a reconciliation with her because he couldn't live without her, and he felt like killing himself.
Two days later, on the Sunday before the shooting on August 7, Betty Chavis called Viola Cross at the service station where she was working. They arranged a rendezvous at the Burger Chef on highway 171 at eleven o'clock that night. When the witness tried to testify to what Betty said at the rendezvous, the State's attorney objected that statements of the deceased were hearsay. Admission of decedent's hearsay statements, the State argued, denied the State the opportunity to cross-examine. The objection was overruled.
Further, Viola Cross testified that the defendant told her the "other fellow" was "packing a shotgun for him", and that she believed the defendant was serious about taking his own life.
The witness further recounted her conversation with the defendant about his request for a ride to Orange, Texas, to visit his sister there. He felt this would enable him to get his mind off of his wife. She also testified to his trip to Orange, his return to Lake Charles and her conversation with the defendant relating to the intervening circumstances.
She then related what the defendant told her after he returned to Lake Charles, about meeting the decedent's two brothers and later the same night finding his wife in Dee's Lounge with Francis Jones, the "other fellow". The witness was then asked, "And what happened?" to which she replied, "So, he said he walked up to the table and he asked Betty could he talk to her for a minute. He wanted to talk to her, and he said she hesitated, but she did get up, and he said"
At this point the State's attorney objected, saying:
"Your Honor, I'm going to again enter an objection to the things that the defendant said. Again, my objection is based on the fact that this is hearsay, that the defense is attempting to get into evidence and get in statements made by the defense, get that into evidence and get in statements made by the defense, get that into evidence made by the defendant without having to put the defendant on the stand and."
Defense counsel immediately moved for a mistrial and the trial judge admonished the jury that any remarks made by the State's attorney
". . . pertaining to the defendant testifying should be completely ignored. A defendant in a criminal proceeding has a constitutional right not to testify, not to give testimony of any kind. He has the absolute right to remain silent, so you are instructed to give no weight of any kind and erase from your mind any remarks made by Mr. Ortego pertaining to the defendant testifying. He is not required to do so."
Again defense counsel objected that the admonition was not sufficient and that a mistrial was necessary.
Article 770 of the Code of Criminal Procedure is relied upon to support the defense motion for a mistrial based upon the prosecutor's comment that the defense was attempting to get defendant's statements into evidence "without having to put the defendant on the stand." The article provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .

*17 (3) The failure of the defendant to testify in his own defense;
. . . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
In brief the defense argues the State's attorney referred directly to the defendant's failure to testify, thus focusing the jury's attention on the fact that the defendant was presenting a defense without testifying. It is asserted that the comment is more than a mere reference to defendant's silence, and amounts to an argument which used defendant's silence to persuade the judge to sustain the prosecutor's objection.
This Court has, according to the State's argument, interpreted the quoted mandatory mistrial provision of Article 770 to mean that the reference must be direct and the inference plain that the remark was intended to bring the jury's attention to defendant's failure to testify.
In his per curiam the trial judge was of the opinion the remarks of the State's attorney were directed to the defendant's attempt to elicit statements supposedly made by the defendant to a third party prior to the alleged crime. As such, the remarks were not made for the purpose of directing attention to defendant's failure to testify.
According to the trial judge, to constitute reversible error, a remark by the State's attorney concerning defendant's failure to testify must be direct and the inference must be plain that such a remark was intended to bring the defendant's failure to testify to the attention of the jury. The judge was convinced that the remarks of the State's attorney in this case did not influence the jury and did not contribute to the verdict.
The State's attorney and the trial judge rely upon the decisions in State v. Reed, 284 So.2d 574 (La.1973), and State v. Howard, 262 La. 270, 263 So.2d 32 (1972), and take the position that to constitute reversible error the comment must be direct and the inference plain that the remark was intended to bring the jury's attention to the failure of the defendant to testify. State v. Reed is authority for the proposition that statements in argument to the effect that there is no refuting evidence do not constitute an impermissible reference to the failure of the defendant to testify. To constitute reversible error, according to that decision, a remark by the district attorney concerning the defendant's failure to testify must be direct, and the inference plain that the remark was intended to bring the jury's attention to the failure to testify. The case is not authority for the State's position in the case at bar. Here the remark was a direct reference to the defendant's failure to take the stand. The remark was to the effect that defendant was trying to prove things he said without taking the stand himself. In this situation the intention of the prosecutor is irrelevant because a direct violation of a prohibitory statute occurs and the error is fatal. State v. Hall, 297 So.2d 413 (La.1974). 2 Marr's Criminal Jurisprudence § 663 (1923).
State v. Howard also announces the rule that to be reversible a remark by the district attorney concerning defendant's failure to testify must be direct and the inference plain that the remark was intended to bring the jury's attention to such failure in order to constitute reversible error. There, however, the Court was considering an indirect remark and the case is distinguishable.
In the United States almost universal legislation decrees, in varying phraseology, that no inference may be drawn from the failure of the accused to testify. 8 Wigmore on Evidence § 2272 (McNaughton rev. 1961). And in Louisiana the history of the principle that it is error for the State's attorney to refer directly or indirectly to the failure of the accused to testify in his own defense is fully set forth in State v. Bentley, 219 La. 893, 54 So.2d 137 (1951).
It suffices to say at this time that the rule of law is clearly stated in Article *18 770 of the Code of Criminal Procedure, and there is a general recognition and acceptance of the wisdom of the rule. A defendant is granted constitutional protection against self incrimination, which means that he cannot be compelled to give evidence against himself. La.Const. art. 1, § 16 (1974). An accused is not considered to be a competent witness at his trial unless he request the right to testify. La.Rev.Stat. 15:461. These rights would be hollow indeed if the silence they protect was allowed to be used against the accused by the State's attorney.
The comment in this case is a graphic example of a substantial violation of a statutory right, and Article 770 mandates that a mistrial be ordered when such a remark is made. La.Code Crim.Pro. art. 921. An admonition to the jury to disregard the remark or comment shall not, in the plain language of Article 770, be sufficient to prevent a mistrial.
For the reasons assigned, the conviction is reversed, the sentence is set aside, and the case is remanded for a new trial.