390 So.2d 506 (1980)
STATE of Louisiana
v.
Perry T. CURRY, Sr.
No. 67429.
Supreme Court of Louisiana.
November 10, 1980.
*507 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
Walter J. Rothschild, Oestreicher, Whalen & Rothschild, New Orleans, for defendant-appellant.
DIXON, Chief Justice.
At approximately midnight on March 27, 1979, Albert Johnson was driving down Bienville Street when he noticed two men struggling on the sidewalk. One man was straddled over the other, slashing the victim's face with a butcher knife. Johnson drove past as slow as he could, then stopped at the corner and watched for about five minutes. He immediately notified the police, who arrived moments later. The victim was dead and there were bloody tennis shoe prints leading away from the body. Perry Curry, who lived in an apartment adjacent to where the murder occurred, soon emerged from the alley leading to his apartment. He asked what was going on. One of the policemen noticed that Curry was wearing tennis shoes, and asked Curry to lift his feet. On the bottom of Curry's left shoe was blood. When Johnson saw Curry, he rapped on the window of the police car in which he was sitting and shouted that this was the man he had seen.
Curry has been convicted of first degree murder and sentenced to life imprisonment. He has appealed, relying on two assignments of error. We affirm his conviction and sentence.

Assignment of Error No. 1
The defendant contends that the trial judge erred in overruling his motion to suppress the tennis shoes. The thrust of his argument is that Curry's initial detention was unlawful because not supported by reasonable suspicion as required by C.Cr.P. *508 215.1. Under the facts of this case, article 215.1 is inapplicable. The officers arrived at the scene of a brutal murder only moments after it had occurred. The defendant suddenly emerged from a dark alley adjacent to where the murder happened. According to the defendant's own testimony, he approached the scene and inquired what was going on. He voluntarily stood by the other observers when told to do so by the police. He voluntarily responded to the officer's inquiries. As this court recently stated in State v. Neyrey, 383 So.2d 1222, 1224 (La.1979):
"However, the articulable suspicion requirement of C.Cr.P. art 215.1(A), Article 1, Section 5 of the Louisiana Constitution of 1974, and the Fourth Amendment of the United States Constitution is necessary only where the stop is forcible. See Terry v. Ohio [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]; State v. Saia, 302 So.2d 869, (La.1974). Police officers do not need probable cause to arrest, or reasonable cause to detain, in order to converse with citizens. State v. Shy [373 So.2d 145, 147 (La.1979)]. The fact that police approach a citizen and address him does not compel the citizen to respond to the officer. The citizen has the legal right to walk away from the encounter, or simply not to respond. State v. Shy, supra; State v. Brown, 370 So.2d 547 (La.1979)...."
This assignment of error lacks merit.

Assignment of Error No. 2
In this assignment of error, the defendant contends that the trial judge erred in denying his motion for mistrial. The defendant's theory is that the prosecutor violated C.Cr.P. 770(2) by making references to another crime committed by the defendant. We find that the unfortunate incident that occurred during Curry's trial does not constitute a violation of C.Cr.P. 770(2).
The state's case hinged on Johnson's identification of Curry. Johnson testified that at the time of the murder Curry was wearing a white, short-sleeved T-shirt, but that at the time of his arrest he was wearing a flowered shirt. The clothing that Curry was wearing at the time of his arrest was taken from him by Richard Stricks, an attorney who visited Curry eighteen hours after the arrest.
The prosecutor in this case had a booking photograph of Curry which he erroneously believed to have been taken in connection with the instant arrest. During cross-examination of Stricks, the picture was shown to the witness. Through questioning of the witness, it was brought out that this was a booking photograph and that Curry was wearing a light colored sleeveless tank top. During redirect examination, Stricks was asked by defense counsel whether the photograph indicated when it was taken. The witness responded, "It looks like March 31, 1978." The defendant was arrested for the instant murder on March 27, 1979. At this point, defense counsel unsuccessfully sought a mistrial, urging that the above incident constituted a violation of article 770(2), which provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial...."
We note at the outset that article 770's mandatory mistrial remedy is available for both direct and indirect comments. Inasmuch as the prosecutor in this case never directly referred to any other crimes committed by Curry, any violation would have had to have been by an indirect reference. It is ofttimes difficult to distinguish between such indirect references, and other innominate types of prosecutorial blunders. This court, in a recent interpretation of article 770(3), dealing with comments on the *509 defendant's failure to take the stand, discussed the test to be applied in determining whether an indirect reference was made:
"The purpose behind the rule embodied in article 770(3) is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf. When the remark directly points out that the defendant has not testified, it is irrelevant whether the prosecutor intended the jury to draw unfavorable inferences from defendant's silence. See State v. Johnson, 345 So.2d 14 (La.1977). Nor is this court allowed to speculate on the effect that the remark had on the jury. State v. Hall, 297 So.2d 413 (La.1974). When a remark directly refers to the defendant's failure to take the stand, the statute mandates that the defendant be granted a mistrial if he requests one. State v. Marcello, 375 So.2d 94 (La.1979). This court will inquire into the intended effect on the jury only to distinguish between indirect references to the defendant's failure to testify and statements that the prosecution's case is unrebutted. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Frank, 344 So.2d 1039 (La.1977); State v. Reed, 284 So.2d 574 (La.1973); State v. Bentley, 219 La. 893, 54 So.2d 137 (1951); State v. Antoine, 189 La. 619, 180 So. 465 (1938). The latter reference is generally permissible. If, however, the defendant is the only one who can dispute the testimony, then `... a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify....' State v. Perkins, 374 So.2d 1234, 1237 (La.1979)." State v. Fullilove, 389 So.2d 1282 (La.1980).
In the instant case, the jury was never shown the photograph. Stricks' testimony was equivocal in that he merely stated that the photo looks like a booking photograph. Furthermore, the prosecutor's error in this case was an innocent one and not one done purposefully to draw attention to prior crimes committed by the defendant. The only way that the jury could have realized that this photograph was from a prior arrest was if they remembered the exact date of this crime, then noted that the date on the photograph was different. The connection was never spelled out for them. It is plausible that the jury still believed this photograph to be the one from the instant case. Had this photograph been from the instant case, such a fact would have been favorable to the defendant. The suggestion had already been made at trial that the defendant could have been wearing the T-shirt underneath his flowered shirt. Such a theory would have been weakened if, instead of a T-shirt, he was wearing a tank top.
Of course, we can only speculate what inferences the jurors drew from the incident. Unless the inference is plain that the prosecutor commented on other crimes committed by the defendant, article 770 is inapplicable. We hold, therefore, that the action of the prosecutor in this case, albeit a blunder, did not constitute an indirect reference to other crimes committed by the defendant.
This assignment of error lacks merit.
The conviction and sentence are affirmed.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur in the result. There was no need, however, for the majority's continued exposition of the fictional "freedom to walk away." See State v. Shy, 373 So.2d 145, 148 (La.1979) (dissenting opinion). As the majority opinion itself indicates, the officers did not approach the defendant under circumstances in which detention seemed imminent. Moreover, the approach of defendant wearing tennis shoes from the alley into which the assailant's bloody footprints led justified a detention for questioning.