478 So.2d 1311 (1985)
STATE of Louisiana
v.
Lawrence O'NEAL.
No. 85-KA-343.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
*1312 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Research and Appeals, Gretna, for plaintiff-appellee.
John H. Craft, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before BOUTALL, CURRAULT and GAUDIN, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "J", Parish of Jefferson, wherein the Honorable Jacob L. Karno sentenced defendant to twenty years at hard labor on each of two counts of armed robbery pursuant to a jury's finding of guilt. We affirm.
On June 19, 1984, Mrs. Mable Beckler and her daughter, Sandra, were entering their vehicle in a parking lot in Metairie when a vehicle occupied by two black males pulled into the parking space next to theirs. The driver emerged from the vehicle, confronted the Becklers with a pistol, and demanded their purses. Both women complied, whereupon the gunman reentered his vehicle and sped off. Mrs. Beckler immediately noted the make and license plate number of the getaway vehicle. A Jefferson Parish Sheriff's deputy arrived at the *1313 scene and recorded the Becklers' descriptions of the perpetrator and the getaway vehicle.
On July 25, 1984, Lawrence O'Neal was arrested on an unrelated charge in Orleans Parish. As booking officers inventoried O'Neal's personal possessions, they discovered Mrs. Beckler's driver's license, World's Fair passport, and employee identification card in his wallet. O'Neal refused to explain his possession of the items. Officer Curt Lettier of the New Orleans Police Department called Mrs. Beckler and learned that the items had been stolen along with her purse during an armed robbery. Detective Dwight Rousseve of the New Orleans Police Department called Detective Mike Guillory of the Jefferson Parish Sheriff's Office and informed him that some of Mrs. Beckler's personal effects had been recovered.
On July 30, 1984, Detective Guillory prepared a lineup of five photographs, including a photo of O'Neal, from the files of the New Orleans Police Department. Detective Guillory presented the lineup to Mrs. Beckler, who immediately identified O'Neal as the gunman. Sandra Beckler arrived home shortly thereafter; and, without knowing that Mrs. Beckler had identified anyone in the lineup, also identified O'Neal as the gunman. Based upon the victims' identifications, O'Neal was charged by bill of information with two counts of armed robbery.
On October 26, 1984, Lawrence O'Neal was charged by bill of information with two counts of armed robbery (LSA-R.S. 14:64). He appeared for arraignment; and, through counsel, pled not guilty to the charges. Defendant's motion for preliminary examination, production of exculpatory evidence and prayer for oyer were marked satisfied; a motion to suppress identification was heard, submitted, and thereafter denied by the trial court.
Trial commenced on January 7, 1985, and a jury of twelve plus one alternate was impaneled. On January 9, 1985, the jury returned a verdict of guilty as charged on both counts. The defendant's motion for a new trial was denied on January 23, 1985. On February 6, 1985, the defendant was sentenced to twenty years at hard labor on each count, said sentences to run concurrently.
It is from the above convictions and sentences that the defendant seeks relief on appeal, asserting as error the following:
that (1) the court erred in denying defendant's motion to suppress identification; that
(2) the court erred in denying defendant's motion for a mistrial following a reference by a state witness to an unrelated arrest of defendant; that
(3) the court erred in denying defendant's motion for a mistrial following a reference in closing argument to the prosecutor's personal opinion; that
(4) the evidence against defendant was not sufficient to sustain the verdict; and
(5) any and all errors patent on the face of the record.

ERROR 1
Prior to trial, defense counsel moved to suppress the photographic identification of O'Neal by the Becklers, contending, among other things, that two small blood-like stains on the shirt worn by O'Neal in the photograph were distinguishing characteristics which caused the identification procedure to be suggestive. On appeal, defense counsel contends that the defendant's photograph "... containing a visual clue, heightened the likelihood that it would be selected. Because of the reinforcing effect of identification of the photograph highlighted by what appeared to be bloodstains, the witnesses' recollection must have been tainted, creating a substantial likelihood of irreparable misidentification." (Appellant's brief pp. 3-4).
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court concluded that reliability is the linchpin in determining the admissibility of identification testimony. A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification *1314 as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Neslo, 433 So.2d 73 (La.1983). It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. Brathwaite, supra; State v. Marx, 446 So.2d 1313 (La.App. 2d Cir.1984); State v. Clark, 437 So.2d 879 (La.App. 2d Cir. 1983).
A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness's attention is focused on the defendant. Neslo, supra; State v. Smith, 430 So.2d 31 (La.1983); State v. White, 446 So.2d 1317 (La.App. 2d Cir.1984). A defendant may be "singled out" in several ways: the defendant's photo may bear distinguishing marks not found on others in the lineup. State v. Davis, 385 So.2d 193 (La.1980); State v. Clark, supra.
In the instant case, the five lineup photographs are of identical size, shape, and background. Defense counsel's complaint is that the shirt worn by the defendant in the photograph has two small blood-like stains. Defense counsel does not explain how a small stain on a shirt would suggest to a witness that the person wearing the shirt is the man who robbed her a month earlier. There is no indication in the record that the victims noticed the stains on the defendant's shirt.
In State v. Robinson, 386 So.2d 1374 (La.1980), the court held that the fact the defendant's photograph was "yellowed" did not make the lineup suggestive. The victim stated she had not noticed the color of the photographs so as to focus her attention on the defendant. The court, in State v. Morgan, 454 So.2d 364 (La.App. 4th Cir. 1984), held that a lineup containing five photos bearing a 1979 date and the defendant's photo bearing a 1980 date was not so suggestive as to warrant reversal. In applying the Brathwaite factors, the court noted that the record did not indicate whether the witness noticed the dates.
Of particular interest is State v. Buchanan, 463 So.2d 660 (La.App. 4th Cir.1985), wherein the defendant contended a lineup of six photos was unduly suggestive because his was the only photo in which the subject had a tattoo. In rejecting this argument, the court noted at page 662:
"One of the witnesses stated at the suppression hearing that the man had a tattoo on his hand and that the minute she looked at the picture she saw the tattoo. However, she clarified her statement by saying that though she saw the tattoo, it was the face that she remembered. Another witness stated that she had observed the tattoo; however, she did not notice the tattoo in the picture until it was pointed out to her at the suppression hearing. Also both witnesses had the opportunity to observe the defendant over an extended period of time.
* * * * * *
"We have reviewed the photographs used in the photographic line-up and find none to be unduly suggestive. Although the tattoo is visible, it is hardly noticeable unless one particularly looks for it. Furthermore, considering the incidents at both stores and the opportunities for the witnesses to observe the defendant over an extended period of time, we find no error by the trial judge in denying the motion to suppress the identification."
As reiterated earlier, neither witness in the instant case mentioned noticing the stains; defense counsel did not question them on this subject at the motion to suppress or at trial. Both victims identified O'Neal from his facial features, and were adamant that he was the gunman. Defense counsel's contention that the photographic lineup was suggestive is without merit. We find that there is no substantial likelihood that the photographic lineup led to a misidentification.

ERROR 2
During examination of Detective Guillory, the prosecutor sought to establish how the defendant came to be arrested on the instant charges. The following colloquy occurred:

*1315 "Q. Did you place Lawrence O'Neal under arrest?
A. No, I did not. A warrant was issued.
Q. Was he already under arrest at the time that you met him?
MS. HUGHES:
I object, your Honor, and I'd like to approach the Bench.
THE COURT:
The Court's going to maintain the objection. Come on up."
After the jury was removed from the courtroom, the judge informed the prosecutor that he could not make reference to prior arrests. The prosecutor stated that he was referring to the Jefferson Parish arrest. The judge, after replaying the transcript, stated: "[w]ell, it has connotations thatif maybe some prior crime, but it could alsoit could also relate to this incident as well."
Defense counsel moved for a mistrial, contending that the prosecutor made reference to other crimes "and I don't think that it can be cured." The trial judge denied the motion, to which action defense counsel took exception. On appeal, defense counsel contends that the alleged reference to another arrest was prejudicial to the appellant in that it is suggested to the jury that the appellant was guilty of other crimes and consequently was capable of committing the instant offense; therefore, a mistrial should have been granted.
LSA-C.Cr.P. Article 770 provides in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;" (Emphasis added)
The denial of a mistrial upon motion of a defendant, when the motion is based properly on one of the grounds listed in LSA-C.Cr.P. Article 770, is "per se a substantial violation of a statutory right," which constitutes reversible error. State v. Nuccio, 454 So.2d 93, 102 (La.1984); State v. Green, 315 So.2d 763, 765 (La. 1975); State v. Brown, 428 So.2d 438, 443 (La.1983).
The rationale behind Article 770(2) is that the introduction of "other crimes" evidence merely to prove that the defendant is a "bad man" involves constitutional problems because of the danger that a defendant may be tried for a charge of which he has no notice, for which he is unprepared, and which unfairly prejudices him in the eyes of the jury. State v. Kahey, 436 So.2d 475 (La.1983); State v. Goza, 408 So.2d 1349 (La.1982). An exception to the general rule of inadmissibility may exist where the state seeks to introduce evidence of other crimes for some substantially relevant purpose other than to show that the defendant is guilty because of his past propensity to violate criminal laws. State v. Moore, 440 So.2d 134 (La.1983); State v. Kahey, supra.
A somewhat analogous situation arose in State v. Curry, 390 So.2d 506 (La.1980), wherein the prosecutor attempted to introduce a booking photograph of the defendant which he erroneously believed had been taken after the arrest at issue. On cross-examination, it was established that the photograph had been taken on March 31, 1978; the defendant was arrested on the charges at issue on March 27, 1979. Defense counsel's motion for a mistrial pursuant to Article 770(2) was denied. In upholding the decision on appeal, the Supreme Court stated at pages 508-509:
We note at the outset that article 770's mandatory mistrial remedy is available for both direct and indirect comments. Inasmuch as the prosecutor in this case never directly referred to any other crimes committed by Curry, any violation would have had to have been by an indirect reference. It is ofttimes difficult to distinguish between such indirect references, and other innominate types of prosecutorial blunders. This court, in a *1316 recent interpretation of article 770(3), dealing with comments on the defendant's failure to take the stand, discussed the test to be applied in determining whether an indirect reference was made:
"The purpose behind the rule embodied in article 770(3) is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf. When the remark directly points out that the defendant has not testified, it is irrelevant whether the prosecutor intended the jury to draw unfavorable inferences from defendant's silence. See State v. Johnson, 345 So.2d 14 (La.1977). Nor is this court allowed to speculate on the effect that the remark had on the jury. State v. Hall, 297 So.2d 413 (La. 1974). When a remark directly refers to the defendant's failure to take the stand, the statute mandates that the defendant be granted a mistrial if he requests one. State v. Marcello, 375 So.2d 94 (La.1979). This court will inquire into the intended effect on the jury only to distinguish between indirect references to the defendant's failure to testify and statements that the prosecution's case is unrebutted. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Frank, 344 So.2d 1039 (La.1977); State v. Reed, 284 So.2d 574 (La.1973); State v. Bentley, 219 La. 893, 54 So.2d 137 (1951); State v. Antoine, 189 La. 619, 180 So. 465 (1938). The latter reference is generally permissible. If, however, the defendant is the only one who can dispute the testimony, then `... a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify....' State v. Perkins, 374 So.2d 1234, 1237 (La.1979)." State v. Fullilove, 389 So.2d 1282 (La.1980).
In the instant case, the jury was never shown the photograph. Strick's testimony was equivocal in that he merely stated that the photo looks like a booking photograph. Furthermore, the prosecutor's error in this case was an innocent one and not one done purposefully to draw attention to prior crimes committed by the defendant. The only way that the jury could have realized that this photograph was from a prior arrest was if they remembered the exact date of this crime, then noted that the date on the photograph was different. The connection was never spelled out for them. It is plausible that the jury still believed this photograph to be the one from the instant case....
Of course, we can only speculate what inferences the jurors drew from the incident. Unless the inference is plain that the prosecutor commented on other crimes committed by the defendant, article 770 is inapplicable. We hold, therefore, that the action of the prosecutor in this case, albeit a blunder, did not constitute an indirect reference to other crimes committed by the defendant."
In the instant case, the prosecutor did not refer directly to other crimes committed by the defendant; he merely inquired into whether the defendant was under arrest when first met by Detective Guillory. Detective Guillory did not respond to the question, as defense counsel's objection was sustained. As noted previously, any error committed by the prosecutor would appear to be innocent, rather than a purposeful attempt to draw attention to the defendant's past criminal activities.
If the prosecutor had wished to bring out details of the defendant's arrest by the New Orleans Police Department, he would have questioned New Orleans Police Department Officer Rousseve, who testified before Detective Guillory. Pursuant to Officer Rousseve's testimony, the jury was aware that the defendant was taken into custody by the New Orleans Police Department and found in possession of Mrs. Beckler's property. However, no reference was made regarding the cause of the Orleans Parish detention or other crimes committed by the defendant.
That there was an Orleans arrest, based on unrelated offenses, was never spelled out to the jury. The jury could probably assume that the Orleans "custody" was based on the instant offense. "Unless the inference is plain that the prosecutor commented on other crimes committed by the *1317 defendant, Article 770 is inapplicable." Curry, supra, at p. 509.
In light of the jury's limited knowledge as to why the defendant was in the custody of the New Orleans Police Department, we conclude that the prosecutor's reference to the defendant's arrest, while perhaps inartfully composed, was not an indirect reference to the other crimes committed by the defendant.
Assignments of errors 3 and 4 were neither briefed nor argued and will be considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

ERROR PATENT
LSA-C.Cr.P. Article 920 provides, "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review, the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975).
The record in the instant case shows that the defendant was sentenced to twenty years at hard labor on each of two counts of armed robbery. (LSA-R.S. 14:64). As the trial judge did not stipulate that the sentences be served without benefit of suspension of sentence, probation or parole, as required under the sentencing provisions of LSA-R.S. 14:64, we note that the sentence imposed is illegally lenient. State v. Telsee, 425 So.2d 1251 (La.1983).
In State v. Robertson, 459 So.2d 581 (La.App. 5th Cir.1984), this court addressed the issue of an illegally lenient sentence. Robertson was convicted of attempted armed robbery and sentenced to ten years at hard labor. The trial judge did not specify that the ten years were to run without benefit of parole, probation or suspension of sentence, a requirement of any sentence for an attempted armed robbery. The prosecuting attorney did not object to the sentence when it was imposed. In response to the appeal, the prosecution did not, by way of either pleading or brief, call attention to the illegally lenient sentence and formally ask the appellate court to correct it. Only in oral argument did the state suggest that the appellate court, under the authority of the amended version of LSA-C.Cr.P. Article 882, should make the correction.
In rejecting the state's contention, this court stated:
We are mindful of State v. Jackson, 452 So.2d 682 (La.1984), in which the Supreme Court of Louisiana stated that "... it is inappropriate for an appellate court to correct the sentence when the defendant alone seeks appellate review." Such action by an appellate court, the Supreme Court said, would have a "chilling effect" on the exercise of the right to appeal.
Nonetheless, Art. 882 does give appellate courts the authority to correct an illegally lenient sentence "... on the application of the defendant or of the state." (Underlining supplied.) The term "application" is not further described, but in the instant case we are not prepared to say that the prosecution has made sufficient "application."
If the prosecution now seeks correction of the illegally lenient sentence imposed on Robertson, it must first approach the district judge. The Supreme Court in Jackson said:
"Only the prosecution can seek correction of the error, and this should be done by applying first to the trial court, subject to subsequent appellate review."
Art. 882, too, seems to indicate that an application is necessary, particularly if the two pertinent sentences of the article are read together. Regardless, the prosecution had not made adequate application *1318 here; and while we recognize the illegally lenient sentence imposed on Robertson, we are hesitant to correct it without having formally been asked to do so.

Robertson, supra, at 582-583.
More recently, in State v. Alfred Ruffin, 475 So.2d 1375 (La.App. 5th Cir.1985), this court remanded an illegally lenient sentence to the trial court for correction. However, Ruffin is distinguishable from both Robertson and the instant case in that the state in Ruffin made a timely formal request that the sentence be corrected.
As the instant sentence has never been challenged, either at trial or on appeal, we will not take action to correct an otherwise illegally lenient sentence.
For the above and foregoing reasons, the conviction and sentences appealed are affirmed.
AFFIRMED.