_[iMICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE:

On September 1, 1994, the defendant, Everett “Buff’ Offray, was charged by grand jury indictment with first degree murder. La. R.S. 14:30. He was arraigned on September 7, 1994, and pled not guilty. He filed a motion to suppress that was denied. On June 4, 1996, a twelve-member jury found the defendant guilty of second degree murder. La. R.S. 14:30.1 He was sentenced July 10, 1996, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He filed a motion for appeal.

FACTS:

The victim, Timothy Lacy, died of a gunshot wound to the head.
Officer Louis Berard responded to the call of a shooting at Law and Gallier Streets on July 13, 1994. He found a vehicle in the middle of the intersection and several spent casings in front of Jessie’s Supermarket, a grocery store. He spoke to Herbert Keyes and Lionel Cooley on the scene and learned that the perpetrator used the nickname, “Buff.” Berard took Keyes and Cooley to the homicide office where they gave written statements. Berard learned that “Buff’ was the defendant. _J¿He arranged a photographic lineup. Cooley identified the defendant. Keyes made no identification because he said he did not get a good look at the suspect during the shooting. Berard attempted to show the lineup to Zannie Morris, who was with Keyes, Cooley, and the decedent at the time of the incident, but at that time could not find him. Berard showed Morris the lineup on July 18, 1994. Morris identified the defendant and gave a statement.
Zannie Morris said he was in the car “hanging out” in front of the store with Cooley, Keyes and Lacy. Lacy had been the driver. Cooley went into the store. The defendant appeared from behind the building with a gun in his hand. The victim got out of the car, and he and the defendant were “fussing.” The defendant was on Morris’s side of the car. Cooley got back into the car. The victim got into the car and closed the door. Before he could put the car in drive, the defendant started shooting. Morris got out of the car, and started to run. He was “nicked” *768 by two bullets, one on the hand and one on the head. He ran to a friend’s house, Kishan Lane. He said that he heard about six or seven shots, and that no one in the car had a gun. He called 911, and an ambulance took him to the hospital. He knew the defendant as “Buff’ from school. He identified him in the photographic lineup and again at trial.
Cooley said that when he came out of the store, the defendant and victim were arguing. The victim told Cooley to get into the car. When the victim started to pull off, shots rang out. He ran with Morris to Morris’s friend’s house. After the ambulance came, he went back to the scene. He identified the defendant in the photographic lineup and again at trial.
Keyes said he could not identify the shooter.
| ¡ASSIGNMENT OF ERROR ONE:
The defendant complains he is being denied his right to an appeal because the record is incomplete.
Article I, Section 19 of the Louisiana Constitution provides: “No person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based....” In State v. Winding, 2000-0364 (La.App.4 Cir. 4/11/01), 787 So.2d 385, the defendant claimed he was prejudiced because the appellate court was unable to review the hearing on the motion to suppress the identification because of the unavailability of the transcript of that hearing. This court disagreed finding no prejudice because the victim, her roommate and the investigating officers all testified at the trial about the identification procedures.
In this case the defendant filed a motion to suppress his identification by Morris and Cooley. The case was originally assigned to Judge Marullo, and he held a hearing on the motion to suppress on April 25,1995 at which only Officer Berard testified. Judge Marullo denied the motion. The case was then transferred to Judge Ward in the ad hoc section who then agreed to re-hear the motion if defense counsel could show that Judge Ma-rullo excluded the testimony of an out of court identification. A second hearing was held April 8, 1996.[1] The transcript of that hearing is not available. However, a detailed minute entry establishes that Morris, Keyes, and Cooley testified. Morris and Cooley were shown the 14photographic array and identified their signatures on the back of the defendant’s picture.
The defendant complains of the missing transcript of April 8, 1996. He suggests that if he had a copy of the transcript he might have been able to explore a possible conflict between pre-trial and trial testimony. Specifically, he argues that Berard testified on April 25, 1996, that he did not show the line-up to Keyes. Berard said “he [Keyes] was shown the line-up, but declined” because he was unable to make an identification. This argument appears to be “splitting hairs.” Berard testified at trial that he showed Keyes the lineup but that he was not able to make an identification because “he didn’t get a good look at the suspect at the time of the shooting.” Keyes testified at trial that he was shown *769 the photographs but could not make the identification. The bottom line is this. Whether Keyes was given the photos and he did not look through them because he was confident he could not make an identification, or whether he actually thumbed through the pictures knowing he could not make an identification, is of no moment because in either case he could not make an identification.
Additionally we note the constitutional guarantee of a “complete record” is to facilitate a defendant’s right of judicial review, not to enhance trial counsel’s cross examination skills. This is especially true where, as here, counsel at the hearing for which the transcript is missing was also trial counsel. We find we are able to afford the defendant his constitutional right of judicial review on the record before us since the investigating detective and the three eyewitnesses testified at the trial.
The defendant attacks the identifications themselves, arguing they were unduly suggestive and conducive to irreparable mistaken identification. When | Kreviewing an out-of-court identification procedure for its constitutionality and its admissibility at trial, the appellate court must first make a determination of whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990). A photographic lineup may be deemed unduly suggestive if the pictures display the defendant so singularly that the attention of the witness is focused on the defendant. State v. Flank, 537 So.2d 236 (La.App. 4 Cir.1988). A defendant seeking to suppress an identification must show both that the identification itself was suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, supra.
The United States Supreme Court has set forth a five-factor test to determine whether a suggestive identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra, Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). A trial court’s determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
In this case, Cooley and Morris saw the defendant up close as he argued with the victim outside the car. Their attention was necessarily focused on the | fiargument. They were both certain of their identifications. Cooley made his identification within hours after the crime. Morris made his within five days.
A review of the photographs in the lineup reveals that the persons depicted bore striking resemblances to each other, and nothing about the defendant’s picture stood out.
The defendant complains that the date of birth, weight and height were included on the photographs. That information appears in small blocks to the right of the pictures and is relatively inconspicuous. All six of the men in the photographs were born in the space of a few years. There is no evidence in the record that information on the photographs contributed to the identifications.
*770 There is absolutely no evidence that Berard suggested to the witnesses that they choose the picture of the defendant.
The defendant argues that Morris might have seen Cooley’s signature on the back of his photograph. There is no evidence in the record that Morris was allowed to turn the pictures over, and an examination of the defendant’s photograph reveals that the signature is not visible from the front.
The identification was reliable. The motion to suppress was correctly denied.
The defendant argues that the bench conferences should have been transcribed because other objections might have been made during the conferences that this court needs to review. This argument is entirely speculative, except for the assertion that the introduction of the defendant’s Bureau of Identification photograph in the photographic line-up constituted the impermissible introduction |7of other crimes evidence. No objection was lodged, and the issue cannot be raised for the first time on appeal. La.C.Cr.P. art. 841.[2]
The defendant complains that counsel referred to “our previously noted objections” twice in the trial, and that without a complete record, it is impossible to know to what objections counsel was referring. There is no indication that any “previously noted objections” were deleted from the record.
The defendant complains that a juror was taking notes and that the notes are not available for him to examine. The jurors were instructed not to take notes, and the trial court confiscated those taken. The defendant fails to specify how the destruction of these improperly taken notes prejudiced him.
The defendant complains that the trial transcript ends with the words “and the trial continues,” suggesting other omissions. The trial court continued for the jury instructions which were later transcribed.
The defendant argues that the record contains motions on which the trial court never ruled. The minute entries record the denial of the motions. There is no indication that there were other hearings that were not transcribed.
This assignment is without merit.
I ASSIGNMENT OF ERROR TWO:
We consider this assignment in the interest of judicial economy only since there *771 was no contemporaneous objection which precludes our review on appeal. La. C.Cr.P. art. 841..
The defendant argues that the trial judge assumed the role of prosecutor in the case and expressed an opinion concerning the defendant’s guilt, citing La. C.Cr.P. art. 772[3] which prohibits a judge’s comments in the presence of the jury. Specifically, he argues that the trial judge erred when he asked Berard five questions concerning the procedure that was used in the photographic line-up. The judge asked whether the same group of photographs was shown to each individual, how the five “fill-in” photographs were chosen, and whether the witness signed his name in full on the photograph chosen and initialed the remaining five. These questions simply augmented those already asked by the prosecutor, and there is no indication that the judge erred by assuming the role of prosecutor.
The defendant also complains that the judge asked Berard to circle the bullet hole in the rear windshield of the car that was depicted in a photograph. Here, again the judge elicited no evidence that was not already before the jury.
This assignment is without merit.
I (ASSIGNMENT OF ERROR THREE:
The defendant complains that the jury was allowed to view the photographs of the crime scene before they were admitted into evidence. He also argues that the photographs were gruesome and should not have been admitted into evidence over his motion, filed pre-trial, to exclude gruesome photographs.
The admission of gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Bourque, 622 So.2d 198 (La.1993), overruled on other grounds, State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16; State v. Eaton, 524 So.2d 1194 (La.1988). No error will be found unless the photographs are so gruesome so as to overwhelm the juror’s reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543 (La.1986). The mere fact that a photograph is gruesome does not, in and of itself, render the photograph inadmissible. State v. Comeaux, 514 So.2d 84 (La.1987).
Post-mortem photographs at the scene and autopsy photographs of a murder victim are admissible to prove corpus delicti, to provide positive identification of the victim, and to corroborate other evidence establishing the cause of death, the manner in which the death occurred, and the location, severity, and number of wounds. State v. Bourque, 622 So.2d at 236. The defendant cannot deprive the State of the moral force of its case by offering to stipulate to what is shown in *772 the photographs. State v. Perry, 502 So.2d at 559.
In this case, the photographs depict the car, the grocery store, some bullet holes in the car, and some blood on the interior of the car. There is nothing [^gruesome about the photographs. The photographs corroborate other evidence about where the shooting occurred and how the witnesses and victim were situated.
Although the defendant argues that the pictures were never admitted into evidence, they were in fact admitted. The pictures were properly admitted, and thus there was no harm in the jury viewing the pictures before they were formally admitted. The jury viewed the photographs in close proximity to the witness’s testimony.
This assignment is without merit.

ASSIGNMENT OF ERROR FOUR:

The defendant complains that the prosecutor made improper closing arguments by referring to facts outside the evidence and that he made other prejudicial remarks.
La.C.Cr.P. art. 774 provides:
The argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
In State v. Langley, 95-1489, p. 7 (La.4/14/98), 711 So.2d 651, 659, the Louisiana Supreme Court stated:
In any event, prosecutors are allowed broad latitude in choosing closing argument tactics. See, e.g. State v. Martin, 539 So.2d 1235, 1240 (La.1989). Although under La.C.Cr.P. art. 774 closing argument must be “confined to the record evidence and the inferences which can reasonably drawn therefrom,” both sides may still draw their own conclusions from the evidence and convey such view to the jury. State v. Moore, 432 So.2d 209, 221 (La.1983), cert. denied 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). “Before allegedly prejudicial argument requires reversal, the court must be thoroughly convinced that the jury was influenced by the remarks and that such contributed to the verdict.” State v. Taylor, 93-2201, p. 21 (La.2/28/96), 669 So.2d 364, 375; State v. Jarman, 445 So.2d 1184, 1188 (La.1984). We also ask whether the remarks injected “passion, prejudice or any arbitrary factor” into the jury’s recommendation. Moore, 432 So.2d at 220.
The defendant complains of the statement: “Ms. Hughes [defense counsel] wants you to believe that they had the gun—the window’s down, right? They are out there with their guns and they are shooting at him. But, if they were, where are their shell casings? Nowhere. Nowhere. The only shell casings are those five where the guy shot into the car.” Defense counsel objected on the ground that there was no testimony that those five bullets came from the same gun.
First of all, it is not immediately clear that the prosecutor was arguing that all of the bullets came from the same gun. Secondly, the jury heard evidence that only the defendant had a gun; there was no evidence that anyone else fired any other gun. Lastly, defense counsel argued in her closing argument that a gun fight had transpired with both sides shooting. The prosecutor’s remarks were directly in response to that argument.
Next, the defendant complains that the prosecutor improperly alluded to *773 fears in the community and in suggesting that there were other intimidated identification witnesses. Defense counsel had specifically referred in her closing argument to other potential witnesses who did not come forward.
The defendant complains that the prosecutor said, “We all know we all know that a year ago a guy got handcuffed broad daylight and he — .” Defense counsel objected, and the trial court correctly sustained the objection since the | ^prosecutor was apparently getting ready to refer to another unrelated crime. It does not appear that a further admonition to the jury was necessary because the prosecutor stopped mid-sentence, and the meaning of the statement is not immediately apparent.
The defendant complains that the prosecutor’s statement “to find him guilty of anything less or not guilty is telling him, ‘You — It is okay to do what you did, man’ ” turned the argument into a plebiscite on crime. The trial court correctly sustained the objection.
This assignment is without merit.

ASSIGNMENT OF ERROR FIVE:

During their testimony both Cooley and Keyes admitted prior convictions. The defendant argues that the trial court erred when it did not instruct the jury that “[T]he testimony of a witness may be discredited by a showing that the witness previously was convicted of a crime. The conviction does not necessarily mean that the witness is failing to tell the truth. It is a circumstance you may consider along with all the other evidence, in deciding whether or not you believe any or all of his [her] testimony.”
The defendant concedes that there was no contemporaneous objection. In the absence of a contemporaneous object, the issue is not preserved for appeal. La. C.Cr.P. art. 841.
This assignment is without merit. {^ASSIGNMENT OF ERROR SIX:
The defendant argues the State failed to present evidence sufficient to support the conviction. This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, *774 such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia^ supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must |umeet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-07, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28.
Second degree murder is the killing of a human being when, among other circumstances, the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1.
Here, the defendant shot the victim at close range, firing several shots at him, after having an argument with him. The evidence was sufficient to support the conviction.
The defendant raises the same arguments concerning the invalidity of the identifications. These arguments were addressed above. The identifications were reliable.
The defendant argues the State did not prove the identity of the victim. The State is under no burden to prove the identity of the victim; it must only prove the killing of “a” human being. Moreover, the State put forth much evidence of the identity of the victim in this case.
The defendant argues Berard was not credible. A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435.
This assignment is without merit.

CONCLUSION:

We affirm the conviction and sentence.
AFFIRMED.

. At oral argument counsel for defendant suggested that Mr. Offray's counsel for this hearing was unprepared for it because he only enrolled the day of the hearing. However, a review of the record reflects that counsel who represented defendant at this hearing had been appointed by the Court on March 15, 1996 to assist lead counsel. The minute entry for April 8, 1996 notes defense counsel objected to the testimony of a witness based upon some prior order of Judge Marullo, but there is no mention by him that he was unprepared to go forward with the hearing on that day.

. La.C.Cr. P. art. 841 provides:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evi-dentiary objections are governed by the Louisiana Code of Evidence.
Further, the Louisiana Supreme Court and this Court have held that reference to "mug shots," "booking photos” or Bureau of Identification ("B of I”) photographs would not require the granting of a mistrial under Article 770. See State v. Curry, 390 So.2d 506 (La.1980); State v. Harris, 258 La. 720, 247 So.2d 847 (1971); State v. Livas, 527 So.2d 398 (La.App. 4 Cir.1988). Additionally, "[n]o inference that an accused is a bad person can be drawn simply from the fact that the police had, or were able to procure, his photograph." State v. Youngblood, 325 So.2d 250, 251 (La.1975). Since admission of these photographs was not prejudicial, a mistrial was not mandated under Article 770 by an indirect reference to the source of the photos. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

. La.C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974). Thus, if the effect of a comment is to permit a reasonable inference that it expresses or implies the judge’s opinion as to the defendant’s innocence or guilt, this constitutes a violation of the defendant’s statutory right to no-comment and thus requires reversal. State v.. Green, 231 La. 1058, 93 So.2d 657 (1957). To constitute reversible error, however, the effect of the improper comment must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983).