385 So.2d 193 (1980)
STATE of Louisiana
v.
Nelson Grant DAVIS.
No. 65852.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied July 7, 1980.
*195 William F. Grace, Jr., Havard L. Scott, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., David R. Paddison, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant, Nelson Grant Davis, was charged by grand jury indictment with two counts of first degree murder. On the day of trial, the prosecutor amended the indictment to charge defendant with one count of second degree murder in violation of R.S. 14:30.1. Following trial, a twelve-member jury returned a 10-2 verdict of guilty as charged, and defendant was sentenced to life imprisonment. On appeal, defense counsel alleges eight assignments of error.
On July 20, 1976, Paulette Royal and Eddie Smith were shot to death in a hotel room at Howard Johnson's Motor Lodge in New Orleans. A third person, Samuel Williams, was also in the hotel room and was shot, but lived and later testified at defendant's trial. Three men, Jesse Ford, Clarence Davis and the defendant, were arrested and charged with the shootings. Jesse Ford testified at defendant's trial in exchange for a grant of immunity from prosecution for the murders.
Ford testified that he was with defendant when David Joseph Sylvester offered to pay defendant "$10,000 a head" to shoot Paulette Royal and Eddie Smith. Sylvester wanted the two dead because they were key state witnesses in a narcotics prosecution against him. On the day after this conversation, defendant and Clarence Davis, defendant's brother-in-law, allegedly forced Ford to get into a car and go with them to the victims' hotel room. Defendant wanted Ford to go along because Ford knew Eddie Smith and probably could get Smith to open the door for them. Smith opened the door for Ford as expected, and Ford, Clarence Davis and the defendant entered the room. The victims, Eddie Smith and Paulette Royal, were told to lie face down on the floor. After defendant became aware that a third person, Williams, was in the room, defendant ordered, "He goes too." Ford testified that defendant put a pillow over Eddie *196 Smith's head and then shot him in the head three times. Defendant then did the same to Paulette Royal. Ford stated that Clarence Davis forced Williams on the floor, put a pillow over Williams' head, and shot him in the head, but Davis' gun jammed after one shot. Defendant then put his own gun to Williams' head and pulled the trigger several times, but the gun wouldn't fire as it had run out of bullets. Defendant, Davis and Ford then fled from the room.
Samuel Williams testified that on the day of the shootings, he was asleep in the hotel room he shared with Smith and Royal when a knock on the door awakened him. Three strangers entered the room and engaged in a conversation with Eddie Smith. Shortly thereafter, Williams became aware that the strangers were armed. The intruders told Williams to get out of bed. One of them pulled him out of the bed, forced him to lie face down on the floor, and then put a pillow over his head. Williams said he could see or hear nothing after the pillow was placed over his head. Some time after the shooting, he gained consciousness and went for help. Williams identified the defendant as one of the three intruders, and as the man who had pulled him out of his bed and forced him onto the floor.

Assignments of Error Numbers 1 and 7(a)
Defense counsel contends the trial judge erred in allowing the prosecutor to amend the grand jury indictment, which charged defendant with first degree murder, to charge second degree murder.
District attorneys are empowered to amend indictments to charge lesser offenses. See State v. Gilmore, 332 So.2d 789 (La.1978). The issue here is whether the amendment violated the defendant's constitutionally protected right to have his prosecution initiated by an indictment of the grand jury. Louisiana's constitutional provision states that "no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by grand jury". La.Const.1974, art. 1, § 15. See also La.C.Cr.P. art. 382.[1] Under the law applicable to defendant, second degree murder is a crime punishable by life imprisonment and, therefore, is a crime the prosecution of which must be instituted by grand jury indictment. State v. Stevenson, 334 So.2d 195 (La.1976). These legal precepts would require that a person should not be accused of the offense for which defendant was charged and convicted except by a group of his fellow citizens acting independently of either prosecuting attorney or judge. See Stirone v. United States, 361 U.S. 212 at 218, 80 S.Ct. 270 at 273, 4 L.Ed.2d 252 (1959).
To support his argument that defendant was deprived of his constitutional right, counsel relies on State v. Donahue, 355 So.2d 247 (La.1978), in which we reversed a conviction because the district attorney, after nolle prossing a grand jury indictment of first degree murder, reinstituted prosecution by a bill of information charging the defendant with second degree murder. We held the reinstitution of prosecution by bill of information in the Donahue case to be a violation of the defendant's constitutional right to have the second degree murder charge instituted by grand jury indictment.
Although the distinction is one without much difference, Donahue is distinguishable from the instant case as the prosecution did not nolle pros the grand jury indictment and reinstitute prosecution by bill of information. Here, he formally amended the indictment in open court on the day of trial to charge the lesser offense of second degree murder. Such an amending procedure cannot be characterized as a true reinstitution of prosecution.
Though not applicable to this prosecution, we observe that such an amendment may prejudice defendant's right to have the second degree murder charge instituted by grand jury indictment if, under the applicable *197 law, second degree murder is not a lesser and included offense of first degree murder, i. e. if the second degree murder definition contains essential elements not included as essential elements of first degree murder. The prejudice results by virtue of the fact that as to the elements of the offense not so included, the prosecutor makes the judgment as to whether the evidence would justify the prosecution instead of the grand jury who, by law, had sole authority to make such a determination.
At the time of the murder of which defendant was convicted, first degree murder was defined as:
"... the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape, [aggravated burglary] or armed robbery; or
(2) When the offender has a specific intent to kill, or to inflict great bodily harm upon, a fireman or a peace officer who was engaged in the performance of his lawful duties; or
(3) When the offender has a specific intent to kill or to inflict great bodily harm and has previously been convicted of an unrelated murder or is serving a life sentence; or
(4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person;
(5) When the offender has specific intent to commit murder and has been offered or has received anything of value for committing the murder."[2]
Second degree murder was defined as:
"... the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill."[3]
Under the applicable definitions above, first degree murder includes all the elements (killing with specific intent) of the first type of second degree murder. The amending of the indictment to charge the lesser offense of second degree murder did not prejudice the defendant's constitutional right to have the prosecution for that crime instituted by a grand jury. When the grand jury considered the evidence relevant to the elements of first degree murder and decided to indict defendant with that crime, it necessarily considered the evidence relevant to all the essential elements of specific intent second degree murder.
This assignment lacks merit.

Assignment of Error Number 2
Defense counsel contends the trial judge erred in denying counsel's motion for a continuance, made as a result of the state's amendment of the indictment to charge one count of second degree murder. Counsel contends the defense needed the continuance in order to prepare for any differences in defending a first degree murder charge and a second degree murder charge.
Code of Criminal Procedure art. 489, in pertinent part, provides as follows:
"If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution."
The purpose of the continuance is the prevention of prejudicial surprise to the defendant. State v. Gibson, 322 So.2d 143 (La.1975). The defendant has the burden *198 of establishing that an amendment has prejudiced the defense. State v. Strother, 362 So.2d 508 (La.1978). Further, the trial judge has great discretion in deciding whether to grant a continuance, and his decision will remain unless he arbitrarily or unreasonably abuses that discretion. State v. Hammontree, 363 So.2d 1364, 1367 (La. 1978); State v. Harvey, 358 So.2d 1224, 1235 (La.1978).
The trial judge did not abuse his discretion when he concluded that the amendment of the indictment did not prejudice the defense. Proof of a specific intent killing as an element of the offense was required under both the original indictment for first degree murder and the amended indictment for second degree murder. Thus, the defendant would have been required to defend on this issue regardless of the charge.
The amendment did not constitute prejudicial surprise and is without merit.

Assignments of Error Numbers 3 and 5
Defense counsel contends the trial judge erred in refusing to grant counsel's pre-trial motion to suppress Samuel Williams' out-of-court identification of defendant.
Some time prior to his identification of defendant, Williams, the victim who was shot but lived, provided the police with the following descriptions of the three men involved in the shootings of himself, Paulette Royal and Eddie Smith. All three men were negro males in their early twenties. The first was approximately 5'10" tall, had a slim build, wore a blue bandana, and appeared to be a homosexual. The second was approximately 5'7" tall, had a slim to medium build, short close-cropped hair, a dark complexion and a small mustache. The third was over 6' tall and was "kind of, not stout, but kind of on the slim side too, but a little stout." He had a medium bush, a dark complexion, a small mustache and a goatee.
On July 27, 1976, seven days after the shootings, the police brought Williams to the police station and asked him to view fifteen photographs. Williams selected three of the photographs as depicting the three men who entered his hotel room on July 20, 1976 and shot him, Paulette Royal and Eddie Smith. The three photographs chosen by Williams were of the defendant, Jesse Ford and Clarence Davis.
Defense counsel argues that the identification procedure was impermissibly suggestive as to the defendant because his photograph was the only one out of the fifteen photographs which fit the description of the third subject. A line-up is unduly suggestive if a sufficient resemblance of characteristics and features of the persons in the line-up, e. g. build, hair, facial hair and complexion, does not exist to reasonably test the identification. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Gray, 351 So.2d 448 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If only one person in the line-up has the characteristics of the perpetrator, the witness' attention will be focused on that person. State v. Guillot, supra.
Out of the fifteen persons depicted in the photographs, three had mustaches and goatees. One of these three appears to be much older than early twenties, and is also overweight. Another of the three appears young enough to have been in his early twenties, but is very overweight. Only the photograph of defendant depicts a young man with a goatee who was "kind of, not stout, but kind of on the slim side too." Thus, defendant was the only person out of the fifteen persons depicted in the photographs who could possibly have been the third subject described by Williams. For that reason, the witness' attention would naturally have focused on the photograph of defendant. We conclude that a sufficient resemblance of characteristics of the persons in the fifteen photographs did not exist to reasonably test the identification, and therefore, the photographic display presented to Williams was unduly suggestive.
However, the fact that the identification procedure used in defendant's *199 case was suggestive does not automatically result in reversal or end our inquiry. Even if an identification procedure is suggestive, an identification is admissible if the totality of the circumstances demonstrate that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Guillot, supra. The likelihood of misidentification violates due process, not merely the suggestive procedure. Manson v. Brathwaite, supra; State v. Guillot, supra. Factors to be considered in determining the reliability of an identification include:
"... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."
Manson v. Brathwaite, supra; State v. Guillot, supra.
An application of this analysis to the facts of the instant case follows. (1) The opportunity to view: Both the witness and Jesse Ford testified that the room was lighted well enough to see. This testimony is corroborated by the fact that the murders took place during the day (late afternoon). Although the witness had the opportunity to view the defendant for only 1½ to 2 minutes, this fact is offset by the close proximity of the witness to defendant. (2) The degree of attention: The witness was not a casual or passing observer, but was a victim whose attention surely was directed to the defendant. (3) The accuracy of the description: Williams' description included information as to the third subject's race, age, facial hair, height, body build and style of hair. This description of physical characteristics matched the physical characteristics of defendant. (4) The witness' level of certainty: Williams testified that he was positive of his identification of the defendant. When asked at trial if he could have identified the killer that day if he had not seen the photographs, he replied, "Yes, I could have. I want to say one thing. How can you forget someone got a pistol that was going to shoot you? How can you forget a face? Do you think you can forget a face like that?" When again asked if he could have identified defendant without the photographs, he interrupted defense counsel to reply that he could have. There is no question that Williams was certain of his identification of defendant. (5) The time between the crime and the confrontation: Williams viewed the photographs only seven days after the offense was committed. In addition, another indicia of reliability is the fact that Williams correctly identified the other two killers. He identified Jesse Ford, who turned state's evidence, as the first subject, and he identified Clarence Davis, who pleaded guilty to the attempted murder of Williams, as the second subject.
Considering the totality of the circumstances dealing with reliability, we do not believe that there is a substantial likelihood of misidentification. Therefore, the introduction of the out-of-court identification did not violate due process and the trial court did not err in denying the motion to suppress the identification.
Defense counsel also contends that an in-court identification of defendant was erroneously admitted into evidence because the in-court identification was the product of the suggestive out-of-court photographic show-up. An in-court identification is admissible if it has a source independent of the suggestive out-of-court identification. State v. Taylor, 347 So.2d 172 (La. 1977); State v. Guillot, supra. We have already concluded the out-of-court identification was reliable. In addition, the witness testified he could have identified the defendant without viewing the photographs.
This assignment is without merit.

Assignment of Error Number 6
Defense counsel contends defendant was denied due process when the state allowed Williams to testify that defendant shot him without disclosing that Williams *200 testified at the earlier trial of David Joseph Sylvester, the man who paid for the murders, that Clarence Davis shot him.
The defense relies upon Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), in which the United States Supreme Court found a violation of due process where a prosecutor, who had promised a key state witness consideration in exchange for his testimony, failed to disclose that fact following the witness' testimony that he had received no consideration.
The purported prior inconsistent statement could be found in the transcripts of David Joseph Sylvester's trial and thus, the defense had as much access to this information as did the state.
This assignment lacks merit.

Assignment of Error Number 7(b)
Defense counsel contends the prosecution and conviction of defendant was illegal because the second degree murder statute, in effect at the time of the amendment of the indictment to charge defendant with second degree murder, did not include specific intent killing. At the time of the offense, specific intent killing without aggravating circumstances was classified as second degree murder.
This assignment lacks merit. See La.R.S. 24:171; State v. Meshell, 352 So.2d 1020 (La.1977); State v. Terrell, 352 So.2d 220 (La.1977); State v. Paciera, 290 So.2d 681 (La.1974).

Assignment of Error Number 8
Defense counsel contends defendant was deprived of his right to be arraigned for the crime for which he was charged (second degree murder) because there was no rearraignment following the amendment of the indictment.
The arraignment's function is to notify the defendant of the charge against him. C.Cr.P. art. 551; State v. Bluain, 315 So.2d 749 (La.1975). In Bluain, this Court concluded that an amendment to an indictment does not necessitate rearraignment where the amendment does not alter the nature of the crime. In the instant case, the indictment was amended to charge the defendant with a lesser and included offense of the graver offense initially charged (see discussion of Assignments of Error Numbers 1 and 7(a), supra). Under those circumstances, defendant can hardly assert lack of notice of the crime for which he is charged, since all the elements of the lesser offense are included within the greater. It cannot be said the amendment of the indictment to charge second degree murder altered the nature of the crime charged.
This assignment lacks merit.
For the above reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[*] Honorable Edward A. de la Houssaye, III participated in this decision as Associate Justice Ad Hoc.
[1] The state contends the defense failed to contemporaneously object to the amendment's unconstitutionality. However, error in institution of prosecution of capital cases by bill of information rather than by grand jury indictment is error discoverable by mere inspection of the pleadings, and can be noticed ex proprio motu. State v. Stevenson, 334 So.2d 195 (La.1976).
[2] La.Acts 1975, No. 327 amending La.R.S. 14:30.
[3] La.Acts 1975, No. 380 amending La.R.S. 14:30.1.