446 So.2d 1317 (1984)
STATE of Louisiana, Appellee,
v.
Louis WHITE, Appellant.
No. 15688-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
Writ Denied May 25, 1984.
*1318 Indigent Defender Office by Timothy R. Fischer, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Carey T. Schimpf and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN and JASPER E. JONES, JJ., and CULPEPPER, J. Pro Tem.
JASPER E. JONES, Judge.
The defendant, Louis White, was indicted on one count of aggravated kidnapping in violation of La.R.S. 14:44 and on three counts of aggravated rape in violation of La.R.S. 14:42. He was found guilty on all four counts by a unanimous twelve member jury and was sentenced to four *1319 consecutive life sentences. Defendant appeals his convictions and sentences relying on one assignment of error.[1]

FACTS
On June 26, 1982 the victim was abducted by a lone gunman from a shopping center parking lot in Shreveport at approximately 2:45 p.m. The assailant forced the victim into his car and drove her to a rural part of Caddo Parish where he raped her three times. He returned the victim to the parking lot from where he abducted her at approximately 4:45 p.m. and released her.
The victim reported the crimes to the Caddo Parish Sheriff's Department and Shreveport Police. She gave the investigating officers a detailed description of her assailant, his car, his clothing and the gun he was carrying. The following day the defendant was arrested by sheriff's deputies while driving his car in the general area where the rapes occurred. The defendant and the car he was driving fit the victim's descriptions. Defendant was taken to the parish jail and his car was impounded. Later the same day Deputy Sam Stubblefield went to the victim's home and showed her a photographic lineup. Prior to showing her the lineup Stubblefield told her a suspect was in custody. The lineup was composed of six slightly out of focus black and white photos of persons matching defendant's general description. Defendant's photo was placed in the number four position in the lineup. The victim was unable to make a positive identification but indicated that two of the men pictured resembled her assailant. She viewed the lineup less than 5 minutes.
The following day, June 28, 1982, the victim viewed a live lineup at the Shreveport Police Department. The lineup was conducted by Detective Steve Prater of the SPD. Prater was unaware that Stubblefield had shown the victim a photo lineup on the previous day. Defendant was placed in a lineup with five other men who fit his general description and was allowed to select his position in the lineup. He chose position number four. Upon viewing the lineup the victim positively identified defendant as her assailant.[2]
Prior to trial defendant moved to suppress various evidence including the live lineup identification and the photo lineup wherein no positive identification was made. The hearing on the motion was held November 10, 16 and 17, 1982. The victim testified at the hearing on November 17. Defendant waived his right to be present in court when the victim testified and was allowed to remain in jail. The victim did not identify him at the hearing. The motion was denied as to both lineups.
The case was tried January 17-21, 1983. The victim testified at the morning and afternoon sessions on January 20. She positively identified defendant as her assailant at the trial.
After the trial defendant's attorney learned that a police officer violated the sequestration order at the hearing on the motion to suppress. The officer told the victim that defendant had altered his appearance since the live lineup.[3] The violation occurred on the first day of the hearing, November 10, 1982. Defendant moved for a new trial based on the violation. The motion was denied.
The issues raised by defendant's appeal are:[4]
*1320 1. Whether the live and photo lineups were suggestive;
2. If they were suggestive, whether the victim's in-court identification was admissible; and
3. What effect, if any, the police officer's comments during the motion to suppress had on the victim's in-court identification.

ISSUE # 1
Defendant contends the lineups were suggestive for three reasons: (1) the victim was told there was a suspect in custody before viewing the photo lineup; (2) defendant occupied the number four position in both lineups; and (3) defendant was the only person who appeared in both lineups.
The argument that the photo identification was suggestive because the victim was informed before viewing it that there was a suspect in custody lacks merit. It is generally assumed that if one is asked to view a lineup, there is a suspect in the lineup. State v. Stewart, 389 So.2d 1321 (La.1980); State v. Wright, 410 So.2d 1092 (La.1982).
A lineup is considered to be suggestive if the pictures or persons used in the lineup display the defendant so singularly that the witness' attention is unduly focused upon the defendant. See State v. Guillot, 353 So.2d 1005 (La.1977); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983).
Defendant's argument that the live lineup was suggestive because he occupied the same position in that lineup as he did in the photo lineup, also lacks merit. Although defendant occupied the number four position in each lineup, the lineups were displayed differently and the number four position was in a different place in each lineup. In the photo lineup the six pictures were pasted inside a file folder in three rows of two across. Defendant's photo was the photo on the right in the second row. In the live lineup the suspects were arranged in a single line of six across. Defendant was the fourth person from the left. More important, the victim testified that at the live lineup she was concentrating solely on trying to identify her assailant. She was not thinking about the photo lineup and identified defendant solely from her memory of him from the crime.[5]
The argument that the live lineup was suggestive because defendant was the only person displayed in both it and the photo lineup is answered by the supreme court decision in State v. Neslo, 433 So.2d 73 (La.1983). There the court stated, "Since only the defendant appeared in both the photographic and the physical lineups, there is the possibility of suggestion; that the witnesses might have remembered the defendant from the photograph and not from the night of the crime." 433 So.2d at 78. The court then held that this fact did not make the lineups unduly suggestive since the witnesses testified that they did not remember the defendant from the pictures and they identified him from the crime.
As was pointed out above, the victim in the instant case testified that she was not thinking about the photos at the time she viewed the live lineup. She based her identification of defendant solely upon her memory of him from the crime. She viewed him in person at the time of the crimes for over two hours, whereas she only viewed the photographic lineup for less than five minutes. These circumstances fully justify her statement that the identification was made solely on the basis of her memory of the defendant at the time of the crimes and not upon the photographic lineup. The live lineup was not unduly suggestive.

*1321 ISSUE # 2
Even if we had found that the victim's pretrial identifications were the result of undue suggestion, that finding would not necessarily require a determination that the trial court erred in admitting her in-court identification. In our recent case of State v. Marx, 446 So.2d 1313 (La.App. 2d Cir.1984) we addressed the issue of whether a witness' in-court identification was properly admitted when there were allegedly suggestive pretrial identifications. There we resolved the issue by the following analysis:
It is well settled that a tainted pretrial identification does not render an in-court identification inadmissible if the in-court identification is reliable and has an independent basis. State v. Passman, 345 So.2d 874 (La.1977); State v. Davis, 385 So.2d 193 (La.1980); State v. Johnson, 389 So.2d 1318 (La.1980); State v. Frisco, 411 So.2d 37 (La.1982); State v. Winn, 412 So.2d 1337 (La.1982). Cf. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra; State v. Clark, supra.
A five factor test is generally used for determining when an identification is reliable and independent of a primary taint. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, supra; Manson v. Brathwaite, supra; State v. Guillot, supra; State v. Davis, supra; State v. Clark, supra.
We applied the five factors to the facts in Marx and found that the witnesses' in-court identifications were admissible. An application of the factors to the facts of the instant case reveals the following:
1. The opportunity to view: The crimes occurred during daylight hours on a bright and sunny day. The victim was with defendant for approximately 2 hours. During most of the ordeal she was within 2-3 feet of defendant. Defendant did not wear a mask or attempt to disguise his face.
2. The degree of attention: The victim had her attention riveted to defendant from the moment he abducted her. She testified that she was planning on reporting him to the police from that moment and took pains to study him as closely as possible in order to give a good description to the investigating officers.
3. The accuracy of the description: The victim gave an extremely accurate description to the investigating officers.
4. The level of certainty: The victim positively identified defendant at trial.
5. The time between the crime and the confrontation: Approximately 6½-7 months elapsed between the crime and the trial.[6]
Weighing the above factors, we find that the victim's in-court identification was reliable and there was no substantial likelihood that she misidentified defendant. The trial court did not err in admitting her in-court identification.

ISSUE # 3
Defendant argues the victim's in-court identification was inadmissible because of the police officer's violation of the sequestration order at the hearing on the motion to suppress. Defendant has pointed to no authority supporting the proposition that a witness' testimony must be excluded at trial because of a violation of a sequestration order at a prior hearing.
*1322 The court may order the witnesses excluded from the courtroom or from where they can see or hear the proceedings and order them to refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel; the court may modify its order in the interest of justice. La.C.Cr.P. 764; State v. Sonnier, 402 So.2d 650 (La.1981).
The purpose of a sequestration order is to insure that a witness will testify as to his own knowledge of the case without being influenced by testimony of other witnesses and to strengthen the role of cross-examination in developing the facts. State v. Sonnier, supra; State v. Kimble, 407 So.2d 693 (La.1981). However, not every violation of a sequestration order must result in the exclusion of a witness' testimony. That decision is within the sound discretion of the trial judge. State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Batts, 324 So.2d 415 (La.1975). Where there is no showing that the witness' testimony was tainted by the violation of the sequestration order, the failure of the trial court to preclude the witness from testifying is not error. See State v. Edsall, 385 So.2d 207 (La.1980); State v. Parker, 421 So.2d 834 (La.1982).
Defendant has not shown that the victim's in-court identification was tainted by the violation of the sequestration order. The violation occurred on November 10, 1982. The victim testified at trial on January 20, 1983. The victim first identified defendant at trial during the morning session on January 20. She testified at the hearing on the motion for a new trial that she did not recall what the officer said in violation of the sequestration order until after she was placed on the stand during the afternoon session. The officer's statement to the victim that the defendant had shaved off his facial hair and put a gray streak in his hair did not contribute to the victim's in-court identification of the defendant.
For the reasons discussed the defendant's sole assignment of error is without merit.
Defendant's convictions and sentences are AFFIRMED.
NOTES
[1] In his assignments of error filed with the trial court defendant alleged six errors. His brief contained only one assignment of error and defense counsel did not argue before this court. Assignments of error neither briefed nor argued are deemed abandoned and are not considered. State v. Buxton, 416 So.2d 71 (La.1982); State v. Rowe, 416 So.2d 87 (La.1982).
[2] After the defendant was identified at the live lineup a search warrant for his car was obtained. The police found the clothes and gun described by the victim in the car.
[3] Defendant had shaved off his beard and dyed a gray streak in his hair.
[4] Defendant's sole assignment of error is:

The trial court erred in denying defendant's motion to suppress a witness' in-court identification which was based on a suggestive identification process which contributed to a substantial likelihood of misidentification.
Defendant's brief does not raise the issues of whether the trial court erred in: (1) denying the motion to suppress; or (2) denying the motion for a new trial.
[5] We point out that at the time Prater set up the live lineup he was unaware that the victim had already viewed a photo lineup. He allowed defendant to pick his own place in the lineup. Any possible suggestiveness in the fact that defendant was in the same number position did not come about as a result of a conscious police effort.
[6] In State v. Marx, supra, we approved an in-court identification occurring ½ months after the crime. In Neil v. Biggers, supra, the United States Supreme Court approved an identification where there was a 7 month interval between the crime and the identification.