501 So.2d 942 (1987)
STATE of Louisiana, Appellee,
v.
Carolyn BOLDEN, Appellant.
No. 18257-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*944 E. Orum Young, Jr., Lafayette, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., W. Monroe, for appellee.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Carolyn Bolden, appeals her conviction and sentence of twenty years at hard labor for manslaughter, a violation of LSA-R.S. 14:31. We affirm.

FACTS
The defendant began keeping the two year old victim, Latonya Washington, in June of 1984 while the child's mother, Janice Washington, was incarcerated. On the morning of October 12, 1984, the child was admitted to E.A. Conway Hospital in Monroe, Louisiana. The defendant identified herself as the child's mother and related that the child had walked into the defendant's bedroom screaming and holding her head. Defendant claimed the child then collapsed with a seizure and when efforts to revive her were unsuccessful, she was taken to the hospital. The child had numerous scratch, bruise and burn marks on her body as well as a blue eye, but no external head injuries were noted. A spinal tap was performed and the spinal fluid, normally a clear substance, was found to be extremely bloody.
A CAT scan revealed severe injury and swelling of the child's brain to the extent that the sutures of the skull plates were separated. The child died on October 29, 1984 without regaining consciousness.
An autopsy revealed multiple areas of intracranial hemorrhages as well as a subluxation or dislocation of the first cervical vertabra that connects the spine and the skull. The dislocation produced a compression of the spinal cord. The autopsy report noted that the brain injuries were not accompanied by any skull fractures and were probably the result of "Shaken Infant Syndrome" which occurs from the whiplash effect of the heavy infant head supported by a much smaller neck being forcefully shaken. Injuries to the brain are produced by the brain being forcefully impacted against the skull walls. The cause of death was listed as multiple intracranial injuries. The report noted the brain showed evidence of both old and new injury of this type. The old injuries were from six-eight weeks old. The report noted other marks on the twenty pound child indicating child abuse and concluded that the fatal head injuries were probably produced by intentional shaking of the child.
The defendant gave a recorded statement to law enforcement authorities in which she attempted to explain the numerous scars, burns, and bruises on the child. Defendant stated that she had been trying to toilet train the child and that on numerous *945 occasions on October 11, 1984 when the child had accidents, the defendant spanked her. The defendant also related an incident in which, during a spanking, the child fell and hit her head on the toilet and another incident in which defendant slapped the child who fell and hit her head on a gas outlet.
The defendant attempted to explain the burn marks, stating that they resulted from the child sitting too close to an electric heater in August or September of 1984. The defendant also related another incident in early August of 1984 when the child had a wetting accident and the defendant beat her with a shoe fifteen to twenty times, breaking the skin on the child's back. Defendant also related incidents of striking the child with a belt on approximately ten occasions and indicated that during the month of August she had also used a switch on the child. Scratches were found on the child's buttocks and a bruise was found in the pubic area. The defendant stated that the child had been sitting in a chair on some books, unclothed, eating. The defendant said the child fell and that defendant grabbed her, causing these injuries. Defendant related that she never sought medical attention for the child because she was afraid of being arrested for abuse.
Defendant was indicted by Grand Jury for the crime of manslaughter as defined by LSA-R.S. 14:31(2)(A) which provides that manslaughter is a homicide committed, without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in LSA-R.S. 14:30 or 14:30.1 or of any intentional misdemeanor directly affecting the person. The offense carries a maximum penalty of twenty-one years at hard labor. The defendant was tried by jury and convicted. She was then sentenced to serve twenty years at hard labor.
The defendant appeals her conviction and sentence arguing that there was insufficient evidence upon which to base her conviction of the crime charged. She also contends that the trial court erred in allowing the state's medical witness to testify following a violation of the rule of sequestration, the trial court erred in admitting into evidence photographs of the victim and that the court failed to comply with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1 in imposing an excessive sentence. We find defendant's contentions to be meritless.

SUFFICIENCY OF EVIDENCE
Defendant contends there is insufficient evidence to convict her of manslaughter in violation of LSA-R.S. 14:31(2)(A) in that the state failed to prove that this nonintentional homicide was committed during the commission of a felony not enumerated under LSA-R.S. 14:30 or 14:30.1 or during the commission of an intentional misdemeanor directly affecting the person. The state contends that the evidence is sufficient to show that the nonintentional homicide was the result of the defendant's commission of the crime of cruelty to a juvenile in violation of LSA-R.S. 14:93, or simple battery, a violation of LSA-R.S. 14:35.
In considering the standard of review for sufficiency of evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984).
The rule as to circumstantial evidence is set forth in LSA-R.S. 15:438 as follows:
Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
When circumstantial evidence is relied upon, in whole or in part, the court has explained, in State v. Eason, 460 So.2d 1139 (La.App. 2d Cir. 1984), writ denied 463 So.2d 1317 (La.1985), the interaction of the Jackson standard with this state's statutory rule concerning circumstantial evidence, as follows:

*946 This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule, however, provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is, therefore, a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it does emphasize the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of the circumstantial evidence. State v. Wright, supra; State v. Chism, 436 So.2d 464 (La.1983).
LSA-R.S. 14:93 defines the felony crime of cruelty to juveniles as follows:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
The misdemeanor crime of simple battery is defined in LSA-R.S. 14:35 as the intentional use of force or violence upon the person of another without the consent of the victim.
In this case, the state presented evidence that the defendant had been engaged in the intentional use of force or violence against this victim for several months and that she had intentionally criminally mistreated the two year old victim causing the victim unjustifiable pain and suffering. The age of the child was evidenced from the autopsy report and from the pictures of the victim. The fact that this thirty-one year old defendant was over the age of seventeen was clearly observable by the jury.
As to this homicide, the record indicates the victim died as a result of several violent intentional shakings causing diffuse swelling of the entire brain.
The defense sought to prove that the child's injuries were not the result of the defendant's intentional conduct, arguing that the brain injuries were caused by the victim's involuntary shaking during the seizure, or from the accidents that occurred during the day when the victim fell and hit her head. However, the medical testimony discounted these explanations for the victim's brain injuries.
Medical testimony of both the admitting physician and the doctor who performed the autopsy revealed that the seizure experienced by the victim was caused by the brain injuries and that those injuries were not caused by the victim's involuntary shaking during the seizure. Medical testimony also showed that the victim's brain injuries were caused by the child being violently shaken and were not the result of any external head injuries, such as the victim's head hitting a gas outlet, toilet, or floor. The doctors who examined the victim testified that had this occurred, some external bruise or injury would have been observable on the outside of the victim's head and that no such injuries were present.
The record further shows that the victim was shaken more than once shortly before admission to the hospital and that she had been shaken several weeks earlier. Evidence of old brain injuries from shaking were observed during the autopsy. These injuries were from six to eight weeks old. Also, the record indicates that in the usual "Shaken Infant Syndrome" two areas of *947 the brain would be injured. However, in this victim, the entire brain was injured, evidencing multiple shakings. Medical testimony showed that these shakings which resulted in the fatal injuries occurred within three to four hours before the child was brought to the hospital.
The defendant stated to authorities that she had exclusive custody of the child during the forty-eight hours preceding the victim's seizure and admission to the hospital.
These facts lead to the inescapable conclusion that the victim's death was caused by the defendant's unlawful behavior in violently and intentionally shaking the child on more than one occasion, shortly preceding her admission to the hospital, fatally damaging the victim's brain. Under the standards announced above, the direct and circumstantial evidence against the defendant clearly shows that this child died as a result of defendant's cruelty to her, and simple battery upon her. No other reasonable hypothesis of innocence is found in the evidence presented. Therefore, we conclude, as did the jury in this case, that ample evidence exists upon which to base the defendant's conviction of manslaughter.

SEQUESTRATION
Defendant contends the rule of sequestration was violated when the state allowed the doctor who performed the autopsy to read the transcription of the defendant's police statement concerning her care of the victim and therefore the trial court erred in allowing the witness to testify. Defendant argues that in the autopsy report, the doctor indicated that the "Shaken Infant Syndrome" was the result of overzealous playing by adults whereas, at the trial, after reviewing defendant's statement to police, the doctor deviated from the autopsy report to find that the victim's injuries were not accidental but rather the result of intentional shakings of the victim.
The rule of sequestration is set forth in LSA-C.Cr.P. Art. 764 as follows:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witnesses with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The purpose of sequestration of witnesses is to prevent their testimony from being affected by the testimony of prior witnesses and to strengthen the role of cross examination in developing facts. State v. Warren, 437 So.2d 836 (La.1983). The trial judge has discretion to disqualify a witness when a rule of sequestration has been violated. State v. Warren, supra; State v. Kimble, 407 So.2d 693 (La.1981); State v. Boutte, 384 So.2d 773 (La.1980). Ordinarily, the trial judge's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Kimble, supra, State v. Boutte, supra. On review, the court will look to the facts of the individual case to determine whether the violation resulted in prejudice to the defendant and will inquire whether the exposure was sufficient to affect the witness' testimony or to undermine the opposing party's ability to cross examine. State v. Wilkerson, 448 So.2d 1355 (La.App. 2d Cir. 1984), writ denied 450 So.2d 361 (La.1984); State v. White, 446 So.2d 1317 (La.App. 2d Cir.1984), writ denied 450 So.2d 957 (La. 1984). Where there is no showing that the witness' testimony was tainted by a violation of the sequestration order, the failure of the trial court to preclude the witness from testifying is not error. State v. White, supra.
Also LSA-C.Cr.P. Art. 764 gives the trial judge the discretion to exclude certain witnesses from the rule of sequestration when such action is in the interest of justice. Medical experts, such as the witness in the present case, are often excluded from the rule of sequestration. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. Forbes, 111 La. 473, 35 So. 710 (La.1903).
*948 Under the facts of this case it appears that the state, on the day of trial, furnished the doctor who performed the autopsy with a transcript of the statement given by the defendant to law enforcement officers concerning how the victim incurred numerous injuries. The defendant objected to the doctor's testimony on the grounds the rule of sequestration had been violated. The trial court overruled the objection.
It is not clear that the rule of sequestration was violated in this case, but assuming for the sake of argument that it was, no prejudice to the defendant has been shown which would require that the testimony of the witness be barred. The autopsy report does refer to the "Shaken Infant Syndrome" and does indicate that the injury can result from overzealous playing by adults. However, the report goes on to state that in this case, due to the numerous other injuries sustained by the victim, the "Shaken Infant Syndrome" in this child was more probably than not the result of intentional child abuse. The doctor's testimony at trial does not differ from the autopsy report in the least. Further, as the trial judge noted, he could have excluded this expert medical witness from the rule of sequestration. The trial court ruling allowing the medical expert to testify was correct.

ADMISSION OF PHOTOGRAPHS
The defendant argues the trial court erred in admitting into evidence three photographs of the victim which were prejudicial and had no relevancy to any material issue at trial. These photographs depicted scratch marks on the buttocks of the child presumably caused by fingernails, a bruise in the pubic area of the child, and a bruised eye of the child. The state contends these photographs corroborate the testimony of the witnesses as to the age and identity of the victim and the nature and extent of bruises on her body. The photographs also corroborate the testimony of the medical examiner who stated that a small child can be grabbed at any point on the body and be shaken vigorously enough to produce the type of brain injuries from which this victim died.
The test as to admissibility of photographs of a homicide victim is whether the probative value of the photographs outweighs the prejudice that may result by display to the jury. State v. Michel, 422 So.2d 1115 (La.1982); State v. Hartman, 388 So.2d 688 (La.1980). Photographs of a victim's body are generally relevant to prove corpus delicti, corroborate other evidence concerning the manner in which the death occurred, the severity and number of wounds, and to establish the identity of the victim. State v. Nelson, 459 So.2d 510 (La.1984), cert. denied 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322, rehearing denied 472 U.S. 1013, 105 S.Ct. 2715, 86 L.Ed.2d 129 (1985); State v. Watson, 449 So.2d 1321 (La.1984), cert. denied 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Edwards, 406 So.2d 1331 (La. 1982), cert. denied 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1981).
The photographs in question in this case were admissible, and were offered to establish corpus delicti and to corroborate the identity of the victim. The photographs were also admitted into evidence to corroborate the nature of injuries to the victim and to further show the cause of death. The record indicates these photographs were carefully edited to exclude evidence of prior abuse to the victim. Under these facts, the trial court was correct in allowing the photographs to be admitted into evidence.

EXCESSIVE SENTENCE
The defendant argues the trial court erred in sentencing her to serve twenty years at hard labor following her conviction for the crime of manslaughter. Defendant contends her sentence is excessive because she is a first felony offender. The defendant also contends the trial court failed to adequately comply with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1.
The sentencing judge is given wide discretion in imposing a sentence within the *949 statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983). While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C. Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983); State v. Smith, 433 So.2d 688 (La.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1984 Art. 1 § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
The record in this case demonstrates adequate compliance by the sentencing court with the provisions of LSA-C.Cr.P. Art. 894.1. The court considered as mitigating factors the fact that the defendant had no juvenile or adult record, had completed high school and one year of college and that up until a few years prior to this offense had maintained steady employment.
As aggravating factors, the court noted the defendant was thirty-one years old, not a youthful offender, and that she had engaged in systematic and repeated physical abuse of the child ultimately resulting in her death. The court noted the numerous bruise, scratch and burn marks over the two year old child's body and noted that she only weighed approximately eighteen pounds.
In light of these factors, the court found that the defendant was in need of a custodial environment to protect society and that any lesser sentence would deprecate the seriousness of the offense which involved the death of the child.
The maximum sentence for the offense of manslaughter is twenty-one years at hard labor. This defendant was sentenced to serve twenty years at hard labor. Maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Telsee, 425 So.2d 1251 (La.1983). This defendant fits that category. Even though this defendant is a first felony offender, the systematic and repeated brutalization of the two year old victim, ultimately culminating in the defendant literally shaking the child to death, makes this defendant one of the worst offenders and makes her crime one of the worst offenses. The sentence in this case is tailored to both the offender and the offense, is not grossly out of proportion to the severity of the offense and does not constitute needless and purposeless imposition of pain and suffering. The trial court committed no error in sentencing this defendant to serve twenty years at hard labor.

CONCLUSION
For the above stated reasons, we affirm the conviction and sentence of the defendant, Carolyn Bolden.
AFFIRMED.