LINDSAY, Judge.
The defendant, Howard Lamar Ray, was convicted of second degree murder. The court imposed a mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. The defendant appeals his conviction. For the following reasons, we affirm.

FACTS

On the afternoon of July 23, 1990, the defendant encountered an acquaintance, Terry Lynn Woodard, at a local laundromat in Ruston, Louisiana. The defendant had recently returned to the area from Florida and was looking for the victim, Cheryl Dixon. Apparently, the defendant and the victim had been involved romantically in the past. The defendant had been told that the victim was living with Mr. Woodard. Mr. Woodard told the defendant the victim did not live with him, but invited the defendant to visit his home.
Later that evening, the defendant went to Mr. Woodard’s residence. Also present were Jack Ball, Roxanne Young and Ray Flowers. The defendant continued his inquiries regarding the whereabouts of the victim. Jack Ball told the defendant that the victim was living at the Highland Apartments in Ruston with Johnny Rabun. The defendant surrep *192 titiously took a steak knife from Mr. Woodard’s residence. He then left the residence with Mr. Ball and Ms. Young who dropped him off at the Highland Apartments. Mr. Ball and Ms. Young testified that the defendant appeared calm and stated that he merely wanted to talk to Ms. Dixon and wanted to “let bygones be bygones.”
The victim’s boyfriend, Johnny Rabun, testified that on the night in question, at sometime after 10:30 p.m., he responded to a knock at their apartment door. The victim was clad in her night clothes. She went into a bedroom while Mr. Rabun answered the door. When Mr. Rabun answered the door, the defendant identified himself and asked to see the victim. Mr. Rabun testified that he attempted to shut the door so he could ask the victim if she wanted to speak to the defendant. However, the defendant forced the door open and stabbed Mr. Rabun in the stomach.
Mr. Rabun fled to the bedroom, but could not find the victim. He then heard the victim in the hallway of the apartment talking with the defendant, asking him to put down his knife. The defendant forced the victim outside the apartment. Mr. Rabun followed, but initially could not determine where they were. He heard the victim scream and saw the defendant stabbing the victim in the chest from behind. Mr. Rabun then pushed and struck the defendant in an attempt to make him stop stabbing the victim.
At that time, Stacy Wright, a neighbor of the victim and Mr. Rabun, saw three people fighting outside the apartment complex. She recognized Mr. Rabun and summoned her boyfriend, Charles Jones.
Mr. Jones testified that he saw the victim lying on the ground and saw Mr. Rabun fighting with the defendant. He observed that the defendant had a knife. Mr. Jones rushed to Mr. Rabun’s aid. He accosted the defendant and kicked him in the head several times. When Mr. Jones turned to look at the victim, the defendant fled.
The police and an ambulance were summoned. The victim was taken to a local hospital where she died of multiple stab wounds. Mr. Rabun was also treated for his injuries.
A package of cigarettes, a lighter and a cap were found at the scene. The next day, a steak knife was found on the grounds of the apartment complex. Mr. Woodard identified the knife as the one missing from the set at his home.
The police investigation revealed that between 11:00 and 11:30 p.m. on the night in question, the defendant went to a convenience store near the Highland Apartments. He purchased a package of cigarettes and matches. At trial, the clerk at the store, who knew the defendant, testified that the defendant was not wearing a shirt, was covered in blood and had been beaten up. The defendant’s hand had been injured and he bled on the money which he gave to the clerk to pay for his purchase. The defendant left the store on foot. An unidentified person who saw the defendant in the store notified police. The defendant was apprehended walking near Interstate Highway 20.
Following his arrest, the defendant was charged with the second degree murder of Cheryl Dixon. He was tried by jury in May, 1992 and was convicted as charged in a unanimous jury verdict. On June 26, 1992, the trial court imposed the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.
The defendant appealed his conviction. On appeal, the defendant contends that the trial court erred in failing to grant his motion for mistrial due to an alleged violation of a sequestration order. He also contends there was insufficient evidence upon which to base his conviction.

SEQUESTRATION

The defendant contends the trial court erred in allowing the testimony of two prosecution witnesses after an alleged violation of the court’s order of sequestration of witnesses. This argument is meritless.
At the beginning of the trial, which lasted three days, the court placed all witnesses under the rule of sequestration, and instructed them not to discuss the ease with any *193 party other than counsel in the case. On the first day of trial, Dr. George McCormick, a forensic pathologist who performed the autopsy on the victim, testified that it appeared that the victim had been stabbed by a right handed person who was behind the victim, reaching around her and thrusting the knife into her chest.
On the second day of trial, Johnny Rabun testified that he saw the defendant stab the victim from behind as she faced away from him. From this position, the defendant stabbed her in the chest by reaching around her body with his right hand.
Defense counsel objected, contending he did not recall hearing these facts in any of Mr. Rabun’s prior statements. Defense counsel stated that he believed the witness had been instructed by the prosecution to corroborate Dr. McCormick’s testimony. Defense counsel contended that Mr. Rabun and Mr. Jones went together to the prosecutor’s office prior to testifying and discussed their testimony, in violation of the court’s sequestration order. Defense counsel asked that the jury be removed and requested that the testimony be stricken from the record as a violation of the rule of sequestration. He also requested that Mr. Jones be barred from testifying.
The jury was removed and a hearing was held. Mr. Rabun stated that two weeks earner, he met with defense counsel and the prosecutor. At that meeting, he told them about the position of the defendant and victim during the stabbing and told them that the defendant was using the knife in his right hand. Mr. Rabun testified that, prior to testifying that morning, he and Mr. Jones met "with John Sheehan, one of the assistant district attorneys prosecuting the case, in his office. He stated that he and Mr. Jones were given a copy of their preliminary examination testimony and were asked by Mr. Sheehan to look over their testimony to refresh their memories. Mr. Rabun stated that during that meeting, he was told to tell the truth. Mr. Rabun further stated that he did not talk to other witnesses in the case and was never instructed by anyone as to what to say during his testimony.
Mr. Jones was examined and stated that he had not talked to any other witnesses about the case. He stated that he and Mr. Rabun were present in Mr. Sheehan’s office that morning, but that no one told him what to say during the course of his testimony, nor was he informed regarding the substance of the testimony of any other witness.
Mr. Sheehan was also questioned and stated that he and defense counsel met with the witnesses two weeks prior to trial. At that time, Mr. Rabun told them that the defendant wielded the knife with his right hand, reaching around the victim from behind and stabbing her in the chest. Mr. Sheehan testified that he had asked the witnesses to come to his office to review their testimony given at the preliminary examination. He did not ask to see Mr. Jones and Mr. Rabun together on the morning of trial, but the two happened to walk into the office at the same time. He stated that when the witnesses arrived at his office, he asked whether they were ready to testify that morning, but the specifics of their testimony were not discussed. Mr. Sheehan stated that he asked the witnesses to remember their previous statements and to testify truthfully.
Based upon this evidence, the trial court found that the rule of sequestration had not been violated. The court ruled that a mistrial was not warranted and that the jury could consider the testimony of Mr. Rabun and Mr. Jones.
LSA-C.E. Art. 615 provides in pertinent part:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from a courtroom or from a place they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interest of justice, the court may exempt any witness from its order of exclusion....
B. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when sanctions are insufficient, disqualification of the witness.
*194 The purpose of the rule of sequestration is to prevent prior testimony from influencing witnesses and to strengthen the role of cross examination in developing the facts. State v. Johnson, 438 So.2d 1091 (La.1983); State v. White, 446 So.2d 1317 (La.App. 2d Cir.1984), writ denied, 450 So.2d 957 (La.1984).
In this case, both the witnesses and the prosecutor were examined extensively about their meeting on the second morning of trial. It was shown that Mr. Rabun had spoken with both the prosecution and defense counsel two weeks prior to trial concerning the defendant’s position during the stabbing and that the defendant used his right hand. Therefore, there is no showing that Mr. Rabun was induced to testify as to these facts in order to corroborate the pathologist’s testimony.
Further, the record does not show that Mr. Jones had any knowledge of the pathologist’s testimony or of Mr. Rabun’s testimony concerning how the attack on the victim occurred. Even though the two men were together in the prosecutor’s office during the trial, there was no showing that these two witnesses discussed the facts of the case with each other at that time, or that they were “coached” as to what to say. The trial court correctly determined that the rule of sequestration was not violated.

SUFFICIENCY OF THE EVIDENCE

The defendant claims that there was insufficient evidence from which a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[1] This assignment is meritless.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The defendant was charged with second degree murder under LSA-R.S. 14:30.1. In pertinent part, the statute defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
Jack Ball and Roxanne Young testified that they drove the defendant to the victim’s apartment complex and that the defendant was calm, but wanted to talk to the victim.
Terry Woodard testified that the defendant was at his home the night of the offense. He later found that one of his steak knives was missing. Mr. Woodard identified the murder weapon as his missing knife.
Further, Johnny Rabun testified that the defendant came to the apartment Rabun shared with the victim. He testified that the defendant stabbed him and then forced the victim out of the apartment. Mr. Rabun also testified that he saw the victim on her knees, being held back against the defendant and that the defendant was reaching around the victim and stabbing her in the chest with a knife held in his right hand.
Stacy Wright testified that she saw the victim and Johnny Rabun fighting with a third person outside the apartment complex. Charles Jones testified that he saw the victim lying on the ground, saw the defendant with a knife in his hand and saw the defendant and Johnny Rabun fighting. This eyewitness testimony was specific as to the actions of the defendant in committing the murder. Both Mr. Jones and Mr. Rabun positively identified the defendant as the assailant.
The defendant also argues that the scientific evidence does not support the jury verdict that he committed the offense because the victim’s blood type was not found on his pants or on the murder weapon.
*195 At trial, Dawn Tingle, a serologist at the North Louisiana Crime Lab, testified that the victim’s blood type was not found on the defendant’s pants. However, she stated that if more than one person’s blood was present on the pants, one type could obscure and prevent detection of the other type. At trial, it was shown that the defendant suffered an injury to his hand and bled profusely from the wound.
Regarding the murder weapon, Ms. Tingle stated that there was not enough blood on the weapon to determine the blood type. This testimony merely shows that the test results were inclusive. Although the victim’s blood type cannot be shown conclusively to be on the defendant’s pants or the murder weapon, the test results also fail to show that it was not on these items. Further, we note that the defendant’s shirt was discarded and was never recovered. It was reasonable for the jury to assume that the defendant discarded his shirt because it was covered with the victim’s blood.
In this case, there was ample evidence for a reasonable trier of fact to find the defendant guilty of the murder of Cheryl Dixon. Eyewitness testimony establishes that the defendant, in a calm and calculated manner, planned the offense, armed himself, sought out the victim and deliberately stabbed her repeatedly.
Although there may have been minor inconsistencies in the testimony of the witnesses, the jury accepted the state’s version of the attack and returned a guilty verdict. This court’s authority to review questions of fact in a criminal case is limited to an evaluation of the sufficiency of the evidence under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const., Art. 5 § 5(C); State v. Williams, 448 So.2d 753 (LaApp. 2d Cir.1984). A reviewing court accords great deference to a jury decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (LaApp. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (LaApp. 2d Cir.1986).
Based upon the record in this case, containing overwhelming evidence showing that the defendant committed the offense as charged, the jury did not err in accepting the evidence presented and in returning a verdict of guilty of sécond degree murder. The defendant’s contention that there was insufficient evidence to support his conviction is without merit.

ASSIGNMENTS NOT ARGUED

In his assignments of error, the defendant claimed that he was denied due process of law when the state removed and discarded bags which had contained evidence, which described the evidence contained within and which bore identifying initials of the officer placing the evidence in the bag. The defendant also claimed in his assignments of error that he was denied a fair trial when the bailiff entered the jury room, discussed with the jury its request for further instructions, and relayed that request to the court.
The defendant has failed to advance these assignments of error on appeal. Assignments of error which are neither briefed nor argued are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

CONCLUSION

For the reasons set forth above, the defendant’s conviction and sentence are affirmed.
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post conviction relief. The record shows that the trial court in this case did not so inform the defendant. This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Cox, 604 So.2d 189 (LaApp. 2d Cir.1992); LSA-C.Cr.P. Arts. 921, 930.8(C). The dis *196 trict court is hereby directed to give the defendant written notice of the prescriptive period for applying for post conviction relief within ten days of rendition of this opinion and to file written proof in the record of the proceedings that the defendant received the notice. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).
AFFIRMED.

. The defendant states in his brief that this assignment of error regarding sufficiency assumes a finding that Mr. Rabun’s testimony should be excluded due to violation of the sequestration order. As stated above, the trial court properly allowed Mr. Rabun's testimony. Therefore, consideration of this testimony is proper in reviewing the claim of insufficiency of evidence.